13284

STATE v. PARRIS

(161 S. E., 496)

*Messrs. DePass & DePass,* for appellant.

*Mr. Samuel R. Watt, Solicitor,* for the State.

December 2, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appellant was convicted in the Court of general sessions for Spartanburg County of the crime of incest; the female concerned being his own daughter, seventeen years of age. His Honor, Circuit Judge Ramage, sentenced him to confinement in the State penitentiary for seven years.

There are eight exceptions in the appeal to this Court, revolving mainly around one incident occurring in the lower Court. Without detailing the exceptions, deeming it unnecessary to do so, we consider all of them together.

The facts gathered from the record, necessary for a determination of the appeal, are, briefly stated, as follows: Soon after his arrest and incarceration in jail, the appellant retained a very reputable member of the Spartanburg Bar, and this attorney appeared for him at the preliminary examination before a magistrate; the agreed compensation for the services having been paid in cash. The appellant being bound over to appear in the Court of general sessions, he then effected arrangements for the same attorney to appear in his defense in that Court. To secure the promised fee to the attorney, the appellant executed to him a mortgage on certain chattels. Before the sessions Court convened, the attorney obtained information, which he thought reliable, and upon which he acted, tending to show that the appellant did not own, or have in his possession, the property he had mortgaged to the attorney, and accordingly that gentleman felt himself justified in not proceeding with the appellant's defense. It is not quite clear as a fact, but the circumstances indicate that the unfavorable information as to the appellant having mortgaged property he did not own came to the attorney from the appellant's father-in-law, also grandfather of the girl involved in the case, who was not very friendly to the appellant, and who had considerable to do with the investigation of the prosecution against him for the serious crime with which he was charged.

The appellant, still confined in prison, and one of his brothers, who had taken some interest in his defense, were of the impression that the retained attorney would appear in the Court of general sessions for the appellant.

A true bill in the case was returned by the grand jury on the afternoon of January 7, 1931, and very soon thereafter, in the same afternoon, the case was called by the solicitor for trial.

Upon announcement as to the attorney who was supposed to represent the appellant, that gentleman stated, either to the Court or to the solicitor, and in the presence and

hearing of the entire jury panel, that the appellant had given him a chattel mortgage over certain personal property to secure his attorney's fee; but since he had learned that the appellant did not have the property covered by the mortgage, he had withdrawn from the case.

The case being ordered to trial, the solicitor announced that the State was ready. The appellant told the Court that he was not ready, and, upon further inquiry, said that he did not have a lawyer, although he had thought one had been employed by him, and that he had "paid him as far as I could go." Upon that statement by the appellant, the solicitor, in the presence and hearing of the entire jury panel, said, in substance, to the Court, that in justice to the attorney, he wished to state that the appellant had given a mortgage to the attorney on certain property "and it was found that he had no property to mortgage." The presiding Judge stated in the presence and hearing of the jury panel that he would take the attorney's word for it, for "he is an honorable gentleman." The appellant, without the aid of counsel, was forced immediately to trial.

The issue as to the guilt or innocence of the appellant narrowed down to the testimony of two witnesses. On the one hand, his daughter testified that he had carnal intercourse with her and was the father of her child. On the other hand, the appellant vigorously denied the accusation of his daughter. In addition, the appellant testified that he had had some trouble with his wife and children, and at one time there had been a long separation between his wife and himself. He swore positively that the charge against him was instigated by his father-in-law, his wife, and children, because of family troubles, mainly due to the insistent demands of his family for luxuries he could not afford to give them. In her testimony, the wife denied that she had any ulterior motive in taking part against her husband in the trial, but there were sufficient admissions from her to show that she and her husband had not lived amicably. The

wife charged the husband with immoral conduct with other women, and the husband charged the wife with such misconduct with another man. It was admitted by the prosecuting witness that upon the occasion of the birth of her child she had attributed the paternity to one other than her father, which statement she had made, as she claimed, because of her fear that her father would punish her if she revealed the real truth.

After the conviction and sentence, the appellant secured the services of counsel, not formerly engaged by him, and moved before the presiding Judge for a new trial. Among the grounds of the motion was the one that the statements of the appellant's former counsel and of the solicitor, and the remarks of the Court as to the declination of the retained counsel to represent the appellant in his trial, and the reason for such declination, in the presence of the members of the jury panel who were to be called to try the appellant, were so prejudicial as to deny the appellant the right to a fair and impartial trial upon only properly adduced evidence. It was also urged in the lower Court, as well as here, that the statement of appellant's former attorney and the remarks of the solicitor and the Judge were such as to impress the jury with the fact that the appellant was unworthy of belief; that he had deceived, or attempted to deceive, his own counsel; and that he had committed another crime; namely, the giving of a mortgage over property which he did not own, or that he had disposed of property mortgaged by him in violation of law, all of which had the effect of influencing the jury to disregard his testimony and to accept as true the testimony of his daughter against him.

Along with the motion for a new trial, the appellant submitted a statement, not sworn to, by six of the petit jurors, including the foreman, who had tried the case, to the effect that the information received by them as to appellant's conduct in giving the mortgage to his attorney influenced them

in reaching a verdict of guilty, for the reason that they regarded the appellant unworthy of belief on oath. Appellant also presented a written request from nine of the twelve jurors who convicted him, that the Court would grant him a new trial, for the reason that they then had grave doubt as to his guilt of the crime charged against him. The motion for a new trial was refused.

The statements of the jurors, filed in the lower Court, have been submitted in the record to this Court. As to these statements, we desire to say that they should not have been presented to, or received by, the Court. Even if they had been sworn to, it was improper for them to have been presented or received. In fact, the jurors should not have signed these statements, which, perhaps, they did without understanding that their action was improper. The zealous young counsel, who has, with much ability, presented his client's cause in this Court in his effort to secure, what he conceived to be, justice in that client's behalf, committed an error, which we know was absolutely unintentional on his part when he secured and offered the jurors' statements to the Court. Without reflecting, or with the slightest intention to reflect, upon the counsel or any of the jurors, we must nevertheless express our disapproval of what was done in this regard. We invite attention to the language of the distinguished jurist, David L. Wardlaw, in *Smith v. Culbertson,* 9 Rich. (43 S. C. L.), 106, where he said: "The mischiefs, the delays, the arts, the scandal likely to ensue, come naturally to our thoughts, when we imagine encouragement given to the pursuit of jurors by disappointed suitors, for the purpose of obtaining affidavits to invalidate verdicts regularly rendered." See, also, *State v. Long,* 93 S. C., 502, 77 S. E., 61.

On the motion for a new trial, the appellant also offered evidence, taken in open Court, going to show that he had not dealt dishonestly with the attorney he had first engaged. He showed clearly that the attorney had been paid the cash fee

required for his services in the preliminary investigation. Witnesses in his behalf also testified that the personal property mortgaged by the appellant to the attorney was owned by the appellant and in his possession at the time of the appellant's arrest, and one of the witnesses testified positively that he saw this property at the appellant's home while the latter was in jail. There was some testimony to indicate very strongly that the appellant's father-in-law, who had taken part in the prosecution against him, and who may have caused the information as to the appellant not owning the mortgaged property to be given to the attorney, had himself removed the property from appellant's home and taken charge of it.

. Regardless of the statements of the jurors presented to the Court, which statements we do not consider at all in the appeal, we are decidedly of the opinion that the appellant is entitled to a new trial.

The attorney first engaged by the appellant was not ▇▇▇ required, of course, to continue in his representation of him unless proper arrangement for his compensation had been made. But the attorney, an officer of the Court, and as a man of influence should not have advised the solicitor or the presiding Judge, in the presence of the jurors called upon to decide the fate of the appellant in a very serious matter, that the appellant had not been honest in his business transactions with him in the case. The statement of the solicitor, in the presence of the jury, had, perhaps, even more effect against the appellant than the statement of his own counsel; for the solicitor is not only a representative of the State, but he speaks in many ways for the defendants brought into Court. The solicitor is a *quasi* judicial officer, and this Court has repeatedly held that a solicitor must not, because of the high position he holds, say things, or do things, which would have any effect to prevent a citizen, however humble, from obtaining the fair and impartial trial he is entitled to under the law. The re-

marks of the presiding Judge, as well as those of the solicitor, supported the charge brought against the appellant by his own attorney that the appellant had not only sought to take advantage of his attorney, but, in all probability, had committed a criminal offense; one other than that charged against him in the Court. The appellant went to trial before twelve jurors who had heard his attorney say, in effect, that he was a dishonest and untruthful man. These jurors heard the solicitor repeat and practically indorse the charge made by the attorney. The presiding Judge by his remarks indorsed the action of the appellant. Undoubtedly, the effect of this was to cause the prospective jurors to go into the jury box with the feeling that the appellant, charged with a serious offense against his own daughter, and deserted in his extremity by his wife, in a desperate effort to secure some assistance had taken advantage of his confiding counselor, and the natural result may have been to influence the jurors to regard the appellant as being a man devoid of principle and unworthy of belief. The exact circumstances and the question arising therefrom have not, perhaps, been heretofore before this Court, but several of our decisions support our conclusion that the error committed against the appellant was harmful and prejudicial. We call attention to two recent cases: *State v. Lewis,* 141 S. C., 207, 139 S. E., 386; and *State v. Ashley,* 128 S. C., 411, 123 S. E., 260.

We are assured that the appellant's former counsel, the earnest solicitor, and the distinguished presiding Judge had not the slightest idea of injuring the appellant. The Judge and the solicitor had only in mind, we know, the idea of justifying the action of the former counsel in his declination to continue his representation of the appellant; and doubtless the former counsel, having been misled by some enemy of the appellant, was not consciously seeking to deprive him of any right. The very fact, however, that all these officers of the Court, men in whom the jurors had the greatest confidence, were so outspoken at an inopportune time as

to appellant's conduct, strengthens our view that the appellant did not have the fair and impartial trial guaranteed to him by the Constitution of the State.

The judgment of this Court is that the appellant's motion for a new trial be granted, his conviction and sentence be set aside, and that the cause be remanded to the Court of general sessions for Spartanburg County for a new trial.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.