16273

STATE v. MURPHY

(56 S. E. (2d) 736)

*Messrs. Hemphill & Hemphil,* of Chester, *and George C. Coleman,* of Winnsboro, *for Appellants,*

*Messrs. W. G. Finley, Solicitor,* of York, *C. T. Graydon,* of Columbia, *and McDonald & McDonald,* of Winnsboro, *for Respondent.*

November 4, 1949

Baker, Chief Justice.

On an indictment charging that appellant, Mattie Bell Murphy, feloniously and with malice aforethought did, on April 20, 1946, shoot, kill and murder one, Richard Cook in Fairfield County, said appellant was put upon trial in the Court of General Sessions in said County at the June, 1947, term of the Court. The trial resulted in her conviction of manslaughter and she was sentenced to serve for ten years in the usual form of such a sentence. She now seeks a reversal of the judgment and sentence, and a new trial.

The fact that at the time and place alleged in the indictment the deceased met his death from a wound inflicted by the appellant while she was intentionally shooting at him with a pistol, is admitted. Her defense was that she shot him in the defense of another (her mother, Nannie Graves), and in self-defense.

In that the appellant on this appeal does not contend that the trial Judge was in error in submitting the issue of her guilt to the jury, it will be unnecessary to summarize the testimony generally adduced at the trial, either pro or con, although we will necessarily make reference to certain portions of the testimony and matters occurring during the trial to which the exceptions relate

Appellant states the "Questions Involved" (Respondent did not file printed brief) to be:

"1. Was it a reversible error for the presiding Judge to deny defendant, pleading self-defense, the privilege of proving the character and reputation of the deceased?

"2. Was it error for the Court to allow the Solicitor to ask leading questions which suggested the answer?

"3. Was it error for the presiding Judge to exclude from the record the statements of the defendant to the police officer immediately after the shooting occurred, since the same was a part of the *res gestae*?

"4. Was the conduct of counsel for the State in the cross examination of certain witnesses of the appellant prejudicial?

"5. Was the Court in error in refusing the motion of defendant for a new trial?"

Appellant's first question is stated too broadly, and is not accurate. During the trial of the case the appellant was permitted to adduce testimony that the reputation of the deceased for turbulence and violence was bad; and further, that the deceased had been convicted of murder, with recommendation to mercy, and was out of prison on parole. She was permitted to prove the reputation of the deceased in the accepted manner in the Courts of this State, and that she feared him; and in the cross-examination of character witnesses placed on the witness stand by the respondent the appellant was permitted to show the conviction of the deceased of murder, and that he had been paroled.

The exception upon which appellant's first question is bottomed is inaccurate and too general under the circumstances. The trial Judge did refuse to permit the introduction in evidence of the judgment roll showing the conviction of the deceased of the crime of murder, with recommendation to mercy, and the life sentence imposed, but as aforestated, the appellant was permitted to prove that the reputation of the deceased for turbulence and violence was bad, and on cross-examination, to show his conviction of the

crime of murder. If it be conceded, without so deciding, that the judgment roll showing the conviction of the deceased for murder was the best evidence thereof, and that the proof of one's reputation is ofttime far afield from the true facts. although accepted as one of the guiding rules in dealing with individuals, yet it cannot be said that the appellant here was prejudiced by the refusal to admit this judgment roll. Of course, had the deceased been alive and a witness in the case, the judgment roll would have been admissible solely as to his credibility. Section 1012-1, Code of 1942; *State v. Williams (State v. Van Williams),* 212 S. C. 110, 46 S. E. (2d) 665.

What we have said hereinabove is likewise applicable to the trial Judge refusing to permit the witness, W. E. Gunter, to go into details. It is obvious that this witness intended to bring out that the deceased had been convicted of murder, but such testimony was thereafter admitted in evidence, and the appellant had the advantage thereof.

We find no basis for appellant's second question. The trial Judge sustained her objections to the leading questions asked by the Solicitor and/or counsel assisting him. If opposing counsel persist in asking leading questions, although ruled out, then the aggrieved party, if he considers his cause injured thereby, should move for a mistrial. We do not find in this record where there was sufficient cause to invoke such a remedy. While on this subject, we desire to again state that it is seldom that the prefacing of a question by the phrase "whether or not" relating to a material matter, removes it from the inhibited class of a leading question; and invite attention to the opinion of this Court authored by Mr. Justice Stukes in *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842.

Complaint is made by the appellant that the police officer to whom she reported the shooting was not allowed to testify that she had gone to him for protection and so stated when she reported the difficulty. The appellant had traveled one-half mile after the shooting in

order to reach the presence of this police officer and, if such statement was made to him, it could just as well have been a self-serving declaration made with deliberate design, and therefore does not come within the *res gestae* rule. Moreover, this police officer testified that appellant didn't tell him "how it happened at all." The statement that she had gone to the officer for protection could not have elucidated the difficulty, and cannot be said to have been spontaneous. The cited cases of *State v. Martin,* 94 S. C. 92, 77 S. E. 721, *State v. Burton,* 111 S. C. 526, 98 S. E. 856, and *State v. Long,* 186 S. C. 439, 195 S. E. 624, lend no aid to the appellant.

The fourth question has given us much concern, especially in the light of the fact that even the severe censuring of the form of the questions on the cross-examination of the witness, Norman Graves, conducted by Mr. McDonald, one of the counsel assisting the Solicitor in prosecuting the appellant, and nothing more, would in nowise benefit her. The State would still be in the position of obtaining a verdict of guilty of manslaughter in which this highly prejudicial and improper cross-examination of an eye witness to the tragedy on a very material matter could have largely influenced the jury. We quote from the record:

"Q. Did you hear any argument between your mother and Richard that night? A. Yes, sir, I heard him ask her to go up to the filling station.

"Q. I mean, in the store? A. Yes, sir, that was in the store when he asked her.

"Q. Did you hear any argument between your mother and Richard that night in the store? A. Yes, sir.

"Mr. Hemphill: Would be glad for you to introduce it; we haven't anything to hide.

"Q. That (indicating) is your signature? A. Yes, sir.

"Q. 'Did you hear any argument between Richland Cook and your mother?' A. 'No, sir, I didn't hear mother.' That is what you said at the inquest, wasn't it? Are you telling the truth now or were you lying then?

"Mr. Hemphill: I think that is prejudicial.

"The Court: He is attacking the witness' veracity.

"Mr. Hemphill: He can't attack his character.

"Q. Which time were you lying, today on the stand or under oath at the Coroner's inquest? Which one is true? I will have to ask the Court to have you answer the question.

"The Court: We have got to get through; you are here to tell what you know; and if you want to explain that, any explanation you want—what is your explanation?

"Q. You are not going to answer the question, are you? A. Yes, sir, I am going to answer it.

"Q. Tell the Judge and me, were you lying at the inquest or lying to me?

"Mr. Coleman: Your Honor, we object to that question.

"The Court: That would be for the jury to say.

"Q. Which one is true? I will try to put it in a more charitable form. A. I am telling the truth today.

"But you were lying before? You say you saw Richard Cook swing at your mother, you didn't say that at the inquest, why didn't you tell the jury that at the inquest? Answer my question, Norman, why didn't you tell the jury at the inquest, that Richard jumped on your mother? You don't care to answer, do you? Now, when did you—when did Lawhorne come to you the first time and tell you about a knife? A. I went to Lawhorne's house.

"Q. Why did you go there? A. To ask him about the knife.

"Q. Why did you ask him about the knife? A. I seen him pick up something and I went there and asked him.

"Q. When did you see him pick it up? A. That night.

"Q. Did you tell the Coroner's jury that? A. I told them Lewis had the knife.

"Q. Did you testify that at the Coroner's inquest? A. Yes, sir, I told them that before the Coroner's jury; I don't know whether it is in there or not."

In *State v. King,* 158 S. C. 251, 155 S. E. 409, 421, it is stated: "The purpose of cross-examination is to assist in bringing out the truth. It must be left very much to the dis-

cretion of the trial judge. Counsel, engaged in the prosecution of a man charged with crime in this state, should be fair to the defendant and to his witnesses. There are proper limits to cross-examination. A defendant in our criminal courts has the right to offer witnesses in his behalf, and, in the exercise of this constitutional right, his witnesses should be protected from personal abuse and improper insinuations against their character. * * * It is not out of place to warn members of the bar, who may be called upon to take part in the trial of causes, against improper cross-examination. We especially desire to sound a warning to lawyers who are called upon to assist our solicitors in criminal prosecutions. There is, undoubtedly, a tendency on the part of these attorneys, in their zeal in their capacity as privately paid attorneys, to go too far in conducting cases, especially in the cross-examination of a defendant and his witnesses. In the recent case of *State v. Kennedy,* 143 S. C. 318, 141 S. E. 559, we held: '* * * Uncalled for personal abuse of a witness by counsel is objectionable, and will not be condoned or allowed by the court.' If the record in any case shows that this salutary rule has been violated, and the effect was, in this court's opinion, to prevent one charged with crime from having the fair and impartial trial guaranteed to him under the Constitution of this state, this court will exercise its power to uphold the Constitution by reversing the case, with the purpose of giving a defendant the trial to which he is entitled."

Again, in the recent case of *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38; 81, Mr. Justice Oxner, in writing the opinion of the Court, and while discussing the improper cross-examination of the defendant and his witnesses by the Solicitor, stated: "Counsel earnestly argue that the principles involved go much further than the mere admissibility of testimony and affect the fundamental right of the accused to a fair and impartial trial. Our attention is called to the fact that the solicitor occupies a *quasi* judicial position, whose traditions he should uphold and preserve, and that it is his

duty to conduct the trial in such a manner as will be fair and impartial to the accused. The soundness of this salutary rule is not questioned, but we think that any transgression of the rule by the prosecuting attorney should be called to the attention of the trial Judge and the question should not be raised for the first time in this Court. Not only was there no motion for a mistrial or other attempt to have the error corrected during the trial, but the matter was not brought to the attention of the Court by a motion for a new trial. * * *"

In the case at bar, timely objection was made to the form of the questions, resulting in but slight, if any restraint in the further improper cross-examination, and the mild ruling of the trial Judge thereabout discouraged the making of a motion for a mistrial to be declared by the Court. Counsel for the appellant had reason to feel that it would be a futile motion to make, and appellant's defense further prejudiced. However, one of the grounds on the motion for a new trial, which was refused, was the improper and prejudicial cross-examination of the appellant's said witness.

We feel that the cross-examination of the appellant's witness prevented the appellant from having the fair and impartial trial guaranteed under the Constitution of this State. Counsel assisting the Solicitor in presecuting the appellant had sufficient warning of the probable result of his improper cross-examination of the witness. *State v. King, supra*; *State v. Warren, supra*; and *State v. Hariott et al.*, 210 S. C. 290, 42 S. E. (2d) 385.

Judgment reversed, and new trial ordered.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.