16651

STATE v. KING

(71 S. E. (2d) 793)

*Messrs. W. G. Finley* and *R. B. Hildebrand,* of York, *for Appellant,*

*Mr. Robert W. Hemphill,* Solicitor, of Chester, *for Respondent,*

July 25, 1952.

TAYLOR, Justice.

Appellant, William Hugh King, was tried and convicted of committing assault and battery with intent to kill upon his wife, Mildred C. King, at the September, 1951, term of

General Sessions Court for York County, for which he was sentenced to serve a term of ten years imprisonment. He now appeals to this Court upon exceptions which present the questions for determination by this Court of whether or not:

1. The sentence of the court was excessive.

2. The sentence of the Court was illegal in that it violated the statutory and constitutional limitations on the sentence provided by law for the crime of assault and battery with intent to kill.

3. His Honor erred in refusing to permit counsel for the defendant to examine Dr. Otha Dunlap, the defendant's personal physician and an admitted medical expert, as to facts peculiarly and particularly within his own knowledge as to the effects of BC headache powders and like preparations on the physical and mental condition of the defendant and as to the instructions the said doctor afterwards gave him with reference to the use thereof.

4. His Honor erred in refusing to permit defendant's counsel to propound to Dr. Dunlap as a medical expert, whose qualifications were admitted, hypothetical questions as to the effect of the use of alcohol and BC or similar headache or medical preparations in combination upon the mental faculties of the person so using them.

5. His Honor erred in admitting in evidence large and gruesome pictures showing great quantities of blood upon the bed, bed clothes, the four (4) walls and other parts of the room wherein the alleged assault occurred when numbers of witnesses had testified thereto and described same in minutest detail, the effect of introduction of such gruesome pictures being solely to prejudice and inflame the minds of the jury against the defendant.

6. His Honor erred in permitting the introduction of the defendant's bloody shirt and trousers in evidence, the testimony being the defendant himself was unscratched and not wounded and that the blood could have only come from the body of the prosecuting witness, the defendant's wife. The

condition of the said clothes having been fully described by witnesses and the only effect on the jury viewing such exhibits being to inflame their passions and prejudice them against the defendant.

7. It was error to refuse to permit the witness, E. A. Harris, to express his opinion as to the insanity of the defendant based upon the facts and circumstances known to and related by him.

8. His Honor failed to charge fully and differentiate the governing principles of the law distinguishing the crime of assault and battery of a high and aggravated nature from assault and battery with intent to kill.

9. His Honor failed to charge the law with reference to what constitutes sufficient legal provocation as applicable in this case.

10. The questions and conduct of the Solicitor on the cross examination of the defendant's witness, Harris, was prejudicial.

11. The questions and conduct of the Solicitor in the cross examination of the defendant King was prejudicial.

12. The argument of the Solicitor to the jury was highly improper and prejudicial.

On the night of May 4, 1951, Appellant proceeded to choke and beat his wife in a most horrible manner, using the heel of a shoe, a bed slat, and a small caliber rifle. Finally, he tried to drown her in the bathtub and probably would have accomplished his purpose except for the timely arrival of the officers, as he is quoted as saying "Don't you know you are going to die tonight?" All of which resulted in her being hospitalized for a period of eleven days. Appellant testified that his state of mind was induced by his wife's unfaithfulness and his having consumed a large amount of whiskey and drugs known as headache powders.

Prior to Appellant's conviction in this case, he had been sentenced to serve a period of two years, with sentence suspended and Appellant being placed on probation, for a simi-

lar attack upon a sister. He was actually serving this sentence at the time of trial of this case as his probation had been revoked by Judge Moss on July 13, 1951, for operating a motor vehicle while under the influence of intoxicants. The Presiding Judge in passing sentence provided that the sentence in this case was to commence after the expiration of the one he was then serving. Appellant now contends such sentence amounts to cruel and unusual punishment and is in violation of Section 19, Article 1 of the South Carolina Constitution which provides that excessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishment inflicted, and in violation of Section 1038, Code of 1942, which provides:

"In cases of legal conviction, where no punishment is provided by statute, the court shall award such sentence as is conformable to the common usage and practice in this State, according to the nature of the offense, and not repugnant to the Constitution."

"[The Supreme Court] has no jurisdiction on appeal to correct a sentence alleged to be excessive when it is within the limits prescribed by law in the discretion of the trial judge, and is not the result of partiality, prejudice, oppressive or corrupt motive. * * * The exercise of a sound judicial discretion must and should be performed in every case with a conscientious regard as to what is just and proper under the circumstances." *State v. Scates,* 212 S. C. 150, 46 S. E. (2d) 693; *State v. Bowman,* 137 S. C. 364, 135 S. E. 360; *State v. Johnson,* 159 S. C. 165, 156 S. E. 353; *State v. Bolin,* 209 S. C. 108, 39 S. E. (2d) 197; *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273; see also, *State v. Phillips,* 193 S. C. 273, 8 S. E. (2d) 626; *State v. Bell,* 215 S. C. 311, 54 S. E. (2d) 900; *State v. Brandon,* 210 S. C. 495, 43 S. E. (2d) 449; and *State v. Goodall,* S. C., 69 S. E. (2d) 915.

Appellant does not contend that the sentence of ten years within itself amounts to cruel and unusual punishment, but that when the ten year sentence is to

commence after the service of a two year sentence which Appellant was then in the process of serving, it does amount to cruel and unusual punishment and cites *State v. Crosby,* 160 S. C. 301, 158 S. E. 685. With this we do not agree. It was certainly within the discretion of the Trial Judge whether Appellant's sentence was to run concurrently or consecutively with one which he was then serving. It is only in rare and unusual circumstances that this Court will interfere with the discretion of the Trial Judge in the imposition of a sentence. The sentence of the Trial Judge was a discretionary matter and in the instant case was within the limitations prescribed. The circumstances are not so unusual as to warrant this Court interfering. Questions one and two are therefore resolved against Appellant.

Dr. J. O. Dunlap was called as a witness on behalf of the state and Appellant upon cross examination sought to propound to the doctor hypothetical questions relative to the effect of alcoholic liquors and BC headache powders upon the mind of one who takes excessive amounts of each. The Trial Judge ruled out these questions on the ground that there was no evidence up to this time of Appellant having taken alcohol and BC powders simultaneously, stating:

"I am limiting you to the proof in this case    *    *    * Understand you have a right to propose a hypothetical question, but not until the evidence has been adduced from which the hypothesis can be based. I have ruled that there is no evidence in this case that the Defendant or anybody else connected with it has been taking drugs of any kind, and until that is done the doctor cannot be asked about it."

Later on an effort was made to cross examine the doctor as to matters purported to be within his knowledge as to the effects of the above, he being the family physician. Permission was again refused on the same ground as above.

"Hypothetical Questions—Assumption of facts in putting a question may be regarded as a test of whether a witness is being examined as an expert.

The expert, properly so called, is asked what would be his judgment upon all or any prescribed part of the facts, as to which evidence has been lawfully received, or which has been admitted, assuming that they are true; provided that a sufficient number of facts are assumed to enable the witness to give an intelligent opinion. The witness having no facts in mind as the result of observation, it is in this way alone that a proper basis for a reasonable judgment can be furnished, and the witness cannot add to the hypothetical question facts within his own knowledge and not in evidence. The requirement that the question should be in hypothetical form, stating fact of which there is some evidence in the case, continues throughout the examination of the expert, * * *. Different hypotheses may be submitted to the witness for different parties, provided the facts embraced in each hypothesis have some support in the evidence.' " *Ellis v. Kansas City Life Ins. Co.,* 187 S. C. 334, 197 S. E. 398, 400.

"An expert witness may be examined by means of a hypothetical question based on facts supported by competent evidence and claimed to be proved, thereby·eliciting the witness' opinion as to the inferences properly deducible from such facts, and such a question is the only way an expert may be examined if the facts are not within his personal knowledge or·observation." 32 C. J. S., Evidence, § 551, page 347.

The Trial Judge was correct in ruling out the questions at that stage of the trial and no attempt was made to recall Dr. Dunlap for this purpose after Appellant had testified to his being under the influence of drugs and liquor. We therefore see no error therein, and are of the opinion that questions three and four should be resolved against the contentions of the Appellant.

Appellant next contends that photographs which were introduced into the evidence were done so for the purpose of prejudicing and inflaming the minds of the jury. These photographs were four in number, showing

the blood on the walls, bed and bathroom where the assault was alleged to have taken place. Appellant contends that such had been testified to in minute details and that the introduction of such photographs came within the rulings of this Court in the *State v. Robinson,* 201 S. C. 230, 22 S. E. (2d) 587; *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587; *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142. With this we do not agree. Appellant contended that he did not beat his wife nearly so severely as she testified and attempted to minimize her injuries. The pictures of the room made shortly after the attack were strong evidence to refute such testimony and therefore proper. See, *Potts v. People,* 114 Colo. 253, 158 P. (2d) 739, 159 A. L. R. 1413.

Appellant next contends that it was error not to permit witness E. A. Harris to express his opinion as to the insanity of the defendant. A portion of this testimony appears as follows:

"Q. Now, that night were you with Mr. Arnett when you took him home from the pool room? A. Yes, sir.

"Q. What was his condition with reference to being— A. Well, I told Earl—

"Mr. Hemphill: Wait a minute. We object to that.

"By Mr. Finley:

"Q. Don't say what you told Earl, but what was his condition when he got home—his mental condition?

"Mr. Hemphill: Object to that. He can tell what the facts were. He doesn't know what his mental condition was.

"By Mr. Finley:

"Q. Well, his physical condition, and his manner of acting, and saying? A. He acted pretty wild. I never seen him act that way before and I had been out with him a number of times.

"Q. All right, sir, did he know where he was after he left the pool room? A. No, sir.

"Q. Then you left him at home about what time? A. About a quarter to nine or nine. Somewhere around there.

"Q. When you left him at home, Mr. Arnett, did Hugh King from the way he talked, acted—was it your opinion that—

"Mr. Hemphill: Let him tell the facts. He can't give his opinion. That is for the jury, your Honor. Ask him what was wrong with him if anything.

"The Court: Let him describe how he acted."

If the testimony had ended there we would be inclined to agree with Appellant's contention that it was error not to permit the witness to express his opinion as to Appellant's sanity or insanity. *State v. Stockman,* 82 S. C. 388, 64 S. E. 595; 12 S. E. Digest, Criminal Law, Key 452-2; 72 A. L. R. 579. However, in the instant case, the testimony did not end with that heretofore related, but continued as follows:

"Q. All right, sir, just tell how he acted? A. Well, he went across the street and was hollering and using pretty loud words. I mean he wasn't boisterous or nothing but he talked out pretty loud and hollered and I knew he wasn't just right when he was doing that because I had never seen him do it before and when he got down the street he jumped out of the car just about the time we got stopped and we had to get out and grab him and get him back in the car.

"Q. That is when you had taken him home? A. Yes, sir; when we was on our way home.

"Q. And you left him at home at nine o'clock? A. Yes, sir.

"Q. And when you left him there then was he still in that condition? A. Yes, sir."

It is therefore clear that although the objection of the Solicitor was sustained, the witness answered the question and gave his opinion as to the mental condition of Appellant. Having done so, this question must be resolved against Appellant.

Appellant next charges error in the Solicitor's cross examination of Appellant and his witness.

" ' "Uncalled for personal abuse of a witness by counsel is objectionable, and will not be condoned or allowed by the court." If the record in any case shows that this salutary rule has been violated, and the effect was, in this court's opinion, to prevent one charged with crime from having the fair and impartial trial, guaranteed to him under the Constitution of this state, this court will exercise its power to uphold the Constitution by reversing the case, with the purpose of giving a defendant the trial to which he is entitled.' " *State v. Murphy,* 216 S. C. 44, 56 S. E. (2d) 736, 739; *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38; *State v. Kennedy,* 143 S. C. 318, 141 S. E. 559; *State v. King,* 158 S. C. 251, 155 S. E. 409.

" 'He (the Solicitor) should bear in mind that he is an officer of the court, who represents all the people, including accused, and occupies a quasi-judicial position, whose sanctions and traditions he should preserve. It is his duty to see that justice is done. He must see that no conviction takes place except in strict conformity with the law, and that accused is not deprived of any constitutional rights or privileges. However strong the prosecuting attorney's belief may be of the prisoner's guilt,. it is his duty to conduct the trial in such a manner as will be fair and impartial to the rights of the accused,  *  *  *  and not say or do anything which might improperly affect or influence the jury or accused's counsel. He should not abuse or make any unseemly demonstration toward accused; abuse or make baseless insinuations against his witnesses; make remarks or insinuations calculated to impress the jury against accused'." *State v. Bealin,* 201 S. C. 490, 23 S. E. (2d) 746, 758. See also *State v. Parris,* 163 S. C. 295, 161 S. E. 496; *State v. Murphy,* 216 S. C. 44, 56 S. E. (2d) 736.

The record discloses that there was no objection on the part of Appellant to that portion of the cross examination now complained of and only upon motion for a new trial was this complaint first made. Further examination of the testimony shows that by far the greater

portion of this testimony was in reference to previous testimony of Appellant and his witnesses. The cross examination was very thorough and vigorous, but this does not mean that the Solicitor was in any wise unjust to the defendant. His duty to see that Appellant received a fair trial in nowise impinged upon his duty to prosecute vigorously. In the present case of *State v. Maxey,* 218 S. C. 106, 62 S. E. (2d) 100, 106, this Court stated:

"It was stated in *State v. McGill,* [191 S. C. 1, 3 S. E. (2d) 257] *supra,* with reference to the solicitor: 'He "is a quasi judicial officer, and this court has repeatedly held that a solicitor must not, because of the high position he holds, say things, or do things, which would have any effect to prevent a citizen, however humble, from obtaining the fair and impartial trial he is entitled to under the law." *State v. Parris,* 163 S. C. 295, 161 S. E. 496, 498. But this does not mean that he should not prosecute vigorously so long as he is just to the defendant, his duty to the State being co-existent with his duty to see that the accused is given a fair trial.' "

Appellant next contends that the Solicitor's argument was improper and resulted in his prejudice, but there was no objection at the time and no statement is cited to substantiate this contention. Exceptions 6, 8 and 9 have been abandoned.

There was a lot of interest in this case, and it was hard fought. Appellant was represented by very able counsel who were alert to every possibility on behalf of Appellant, but the evidence was so overwhelming that it is difficult to see how the results could have been other than they were. There is nothing in the record to indicate that appellant did not receive a fair and impartial trial.