22383

The STATE, Respondent, v. PEE DEE NEWS COMPANY, INC., Appellant.

(336 S. E. (2d) 8)

Supreme Court

*Paul J. Cambria,* Buffalo, N. Y., and *Water Bilbro,* Charleston, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen., Harold M. Coombs, Jr.,* and *Carlisle Roberts, Jr.,* all of Columbia, and *Sol. James O. Dunn,* of Conway, *for respondent.*

Heard May 7, 1985.

Decided Oct. 15, 1985.

*Per Curiam:*

Pee Dee News Company, Inc. (Appellant) appeals convictions on 46 counts of distributing obscene material.

We reverse and remand for new trial.

Appellant is a distributor of various types of publications, including magazines seized under criminal warrants and made the subject of 49 indictments charging distribution of obscene materials.

## ISSUES

Reversal is based upon prosecutorial misconduct and failure of the trial judge to consolidate counts in the indictments for purpose of sentencing.

We address those issues and additionally, Appellant's challenges of the constitutionality of the obscenity statute and adequacy of the indictments. Remaining questions are rendered moot by the reversal.

## I. CONSTITUTIONALITY

Appellant contends that Section 16-15-260 (1976 & Supp. 1984) is overbroad and vague in its definition of patently offensive and prurient interest and overbroad in its definition of sexual conduct.

Constitutionality of the statute as to patently offensive and prurient interest was upheld by this Court in *State v. Barrett*, 278 S. C. 92, 292 S. E. (2d) 590, *cert. den.* 459 U. S. 1021, 103 S. Ct. 388, 74 L. Ed. (2d) 518 (1982). By order of September 19, 1984, we denied Appellant's Petition to Argue Against Precedent.

Accordingly, we are concerned here only with the challenge of the statute's alleged overbroadness in Section 16-15-260(d)(2), which defines sexual conduct.

Specifically, appellant argues that the language "... female breast nipples including male or female genitals in a state of sexual stimulation or arousal or covered male genitals in a discernibly turgid state," exceeds the limitations imposed by the U. S. Supreme Court in the pleading case of *Miller v. California*, 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. (2d) 419 (1972). We disagree.

*Miller*, as this Court stated in *Barrett, supra*, 278 S. C. at p. 95, 292 S. E. (2d) 590, "... attempted to clarify the law for the state and federal lawmakers in the problem of dealing with obscenity and pornography." In doing so the *Miller* court emphasized its intention not "to propose regulatory schemes for the States."

The "covered male genitals in a discernibly turgid state," of which Appellant complains is a description we find accords with language in *Miller*, which offers a plain example for regulation "... and lewd exhibition of the genitals." Photographs of a penis, discernibly turgid, may offend Ap-

pellant's interpretation of *Miller*, but they might well constitute "lewd exhibition of the genitals."

Cases cited by Appellant are distinguishable upon the facts, and not in point.

Appellant's position here is akin to that of the defendants in *Barrett, supra,* in which Chief Justice Littlejohn, speaking for the Court stated:

> Here, as is typical in obscenity cases, counsel 'picketh the nit.' Squabbles over technicalities and definitions have lured the courts to write fluently, resulting, ofttimes, in overdefining obscenity. We appreciate the fact obscenity is difficult to define; fortunately, it is not difficult to detect.
>
> ... Our statute is not so broad as to overcome the presumption of constitutionality.

*Barrett,* 278 S. C. at 96, 292 S. E.(2d) 590.

## II. ADEQUACY OF INDICTMENTS

Appellant claims error in the trial judge's refusal to quash the indictments as vague and duplicitous. We disagree.

An indictment is adequate if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and acquittal or conviction to be placed in bar to any subsequent conviction.

*State v. Crenshaw,* 274 S. C. 475, 266 S. E. (2d) 61 (1980).

The wording of the indictments accords with the language of S. C. Code Ann. Section 16-15-320 (1985), which prohibits obscenity and enumerates four methods by which a defendant may be in violation. Prior to trial the court amended the indictments, eliminating possible confusion. The indictments were clear, and the trial judge's refusal to quash them was correct.

Nor were the indictments duplicitous. The statute prohibits obscenity; the indictments relate to one crime only, and the description of more than one method of violation does not create a new crime. See, *State v. Jeffcoat,* 279 S. C. 167, 303 S. E. (2d) 855 (1983).

Moreover, any possible duplication was remedied by amendment of the indictments, eliminating any surplusage.

### III. PROSECUTORIAL MISCONDUCT

We recognize and affirm here the sound and long standing rule in South Carolina that wide latitude is permitted in cross examination. We likewise recognize and affirm the rule which holds that the scope of such examination is in the sound discretion of the trial judge, a discretion not to be disturbed absent abuse.

From the record in this case it is patent that the solicitor, in his cross examination, exceeded the permissible latitude and, in so doing, denied Appellant a fair trial.

In his cross examination the solicitor repeatedly employed the hypothetical question, the factual basis for which, however, was not in the record, either at the time of asking or at the close of evidence.

The necessity that facts cited in hypothetical questions be of record has been stated by this Court:

> The expert, properly so called, is asked what would be his judgment upon all or any prescribed part of the facts, *as to which evidence has been lawfully received,* or which has been admitted, assuming that they are true. [Emphasis supplied].

*State v. King,* 222 S. C. 108, 116, 71 S. E. (2d) 793 (1952).

The facts set out in the solicitor's hypotheticals, if established, were favorable to the state in conveying inferences of Appellant's guilt. These inferences, which were impermissible to be drawn, were highly prejudicial and devastating to Appellant's defense.

Although there were numerous prosecutorial excesses, one sufficient to require reversal, and typical, was a line of interrogation occurring during the cross examination of Appellant's witness, Theodore McIlvenna.

In an obvious effort to convey to the jury an inference that a rape in Horry County, resulting in a conviction, was caused, at least in part, by the rapist's possession of magazines like those distributed by Appellant, the solicitor asked:

... if I gave you the additional facts for this hypothetical question, that addresses of girls that you could call up on the phone for sexual conversations have been found in the possession of people convicted of rape, would that change your mind? (Tr. Vol 3, p. 515-516, 1. 24).

When counsel objected on grounds that no substantiating fact to support the hypothesis was in evidence, the solicitor, after being instructed by the court to "Pose the question in terms of the basis on the record," inquired:

MR. DUNN: Your Honor, would I be at liberty to put those facts into evidence?
COURT: Yes, sir.

The facts were never placed in evidence assuming, without deciding, the propriety of the question at all.

The solicitor continued:
Assuming for the sake of my question — and don't answer until His Honor has a chance to rule — that I can show you a case where a rapist, convicted of rape in this court, had in his possession the phone number of one of these girls listed in this type of magazine that you call where you can call and talk about sex with them — would that fact change your mind about the effect it would have on a sex offender? (Tr. Vol. 3, p. 516, 1. 17-23).

\* \* \* \* \* \*

How about if he's been convicted of rape *in this very courtroom,* having been arrested with that number in his pocket, coming out of a book, *just like some of these that are in evidence?* (Tr. Vol. 3, p. 517, 1. 11-14, emphasis supplied).

\* \* \* \* \* \*

All right, sir, let me ask you this. If I can produce evidence for you here that would show that *a man convicted of rape and murder in this county,* had available to him in his billfold, the number of a lady just like

is reflected in State's Exhibit No. 14, of that type, a phone number for him to call, and in lieu of that he raped and murdered somebody here in this county ... (Tr. Vol. 3, p. 553, 1. 9-15, emphasis supplied).

The likely prejudice to Appellant from the foregoing impacts with such flagrance as to require no further comment. Failure of the solicitor to present the facts set out in the hypothesis simply exacerbated the error, an error which admonitions of the trial court could not cure. *State v. Huiett*, 271 S. C. 205, 246 S. E. (2d) 862 (1978).

## IV. SENTENCING

Appellant also argues the trial judge should have consolidated the counts contained in the indictments for the purpose of sentencing. We agree.

The indictments were based upon Appellant's distribution of 39 magazines to seven stores. Nowhere in the record is there evidence that the distribution occurred at different times.

The Court of Appeals of Georgia has held that separate exhibitions of several films for which the viewer pays one entry fee constitute only one violation of its obscenity statute. *Maxwell v. State*, 152 Ga. App. 776, 264 S. E. (2d) 254 (1980); *cert. den* 449 U. S. 899, 101 S. Ct. 245, 66 L. Ed. (2d) 114. We find the analogy to separate distributions of several magazines persuasive.

It is clear from the evidence that magazines were distributed by Appellant to seven stores. In the absence of proof by the state that there were several distributions to each store, the record can support but one count of distribution to each. To hold otherwise is to speculate on matters not apparent in the record. It was error, therefore, to refuse to consolidate the indictments for sentencing.

## CONCLUSION

This trial was lengthy, requiring a transcript of over 1500 pages. Its length, however, was no greater than the intensity with which the parties contested the issues.

One is impelled by a survey and analysis of the entire record to acknowledge the vigor and commendable zeal with which the solicitor conducted his prosecution. We have in

numerous decisions recognized this right, even obligation, of the state's attorney to prosecute vigorously.

However, no degree of commendable zeal can be permitted to proscribe or interdict the most sacred constitutional right guaranteed to every criminal defendant, no matter his or her appearance of guilt: *a fair trial.*

That is precisely what occurred here. Accordingly, we must reverse.

Reversed and remanded for new trial.

LITTLEJOHN, C. J., concurring and dissenting in separate opinion.

LITTLEJOHN, Chief Judge, concurring and dissenting.

I concur in the views expressed in the majority opinion as relates to *I. Constitutionality* and as relates to *II. Adequacy of Indictments.* I would affirm the convictions, sustain the objection to the sentences imposed and remand for resentencing only.

I respectfully dissent as relates to that portion of the majority opinion which treats the subject of *III. Prosecutorial Misconduct.*

The majority opinion makes a very drastic ruling in holding that the solicitor is guilty of prosecutorial misconduct. The opinion states that the defendant has been deprived of "... the most sacred constitutional right guaranteed to every criminal defendant ..." Normally, misconduct on the part of a prosecuting attorney does not occur in the presence of the judge. Those actions of which the appellant complains occurred in the presence of the judge. Misconduct on the part of an attorney is a violation of the Code of Professional Responsibility and warrants a sanction by the Board on Grievances and Discipline. Could it be also argued that the rulings of the judge amounted to misconduct? I think not.

In actuality, the majority opinion does not point out specific error on the part of the judge who was charged with the duty of seeing that the defendant received a fair trial. The opinion at most reverses the solicitor insofar as prosecutorial misconduct is concerned.

Having pointed out the can of worms which the majority opinion would open, I now turn to the merits of the appeal.

The majority opinion recognizes the fact that "... in South Carolina a wide latitude is permitted in cross examination." In trying a case, the trial judge has a broad discretion, and I would not herein hold that the judge abused that discretion under the circumstances of the case.

We are dealing with some forty different publications distributed by the appellant. The magazines which were exhibited in the trial court are before our Court for scrutiny. The trial judge held that these were not protected by the First Amendment to the Constitution. I agree. There was left to the jury the question of whether these publications were or were not obscene as defined in statutory law of this state. Section 16-15-260 Code of Laws 1976 *et seq.* It is well established that obscene materials are not protected by the First Amendment of the constitution of the United States, or the corresponding provision of the Constitution of South Carolina.

The magazines leave little to one's imagination. They were patently obscene, and I do not understand the majority opinion to contend otherwise. If a directed verdict of guilty were in order under our procedures, the same might appropriately have been granted. I appreciate the fact that obscenity is not easy to define; but under any of the definitions known to the law, these magazines were obscene. The decisions of the Supreme Court of the United States has made the law of obscenity difficult to enforce. The opinions of that court speak in terms of "average person," "contemporary community standards," "prurient interest," "patently offensive," "normal sexual acts," "lewd exhibition," and "serious literary, artistic, political, or scientific value." In order to apply the law, a lay juror needs only to understand these. Such terms inspired Justice Potter Stewart to comment that obscenity is difficult to define, but "I know it when I see it." The jury knew it when it saw it, and I know it when I see it.

Questions and comments of the solicitor quoted in the majority opinion and found to be obnoxious occurred during the cross examination of witness Robert Theodore McIlvenna. This witness testified that he was a Methodist preacher from California and was a sexologist. It took seventy pages to qualify him to proceed to testify as an expert.

He stated that he had testified in about three hundred obscenity trials, always for the defendant except on five occasions. The judge qualified him to testify as an expert as relates to definitions included in §§ 16-15-260(1) and (3) and (b) and (e). Those sections read as follows:

(1) that the average person, applying contemporary community standards would find that the matter taken as a whole, appeals to the prurient interest, and

(3) that the matter taken as a whole, lacks serious literary, artistic, political, educational, or scientific value.

(b) 'Prurient Interest' means a shameful or morbid interest in nudity, sex or excretion and is reflective of an arousal of lewd and lascivious desires and thoughts.

(e) 'Community Standards' used in determining prurient appeal, patent offensiveness or suitability for minors are the standards of the State of South Carolina.

It was his expert testimony that these magazines, which he had seen, were not obscene. While I doubt that his testimony was competent and should perhaps have been excluded, the state did not seriously object to this testimony and it was of course before the court. It was during the testimony of this witness that the solicitor is alleged to have become over zealous.

These obscenity cases are normally defended with much zeal by attorney specialists who travel throughout the United States trying these cases and carrying with him expert witnesses. A solicitor is allowed wide latitude: and if his zeal equals that of the defending attorney, he should not be criticized.

In the recent case of *The State v. Gaskins*, 284 S. C. 105, 326 S. E. (2d) 132 (1985), we refused to reverse, even in a capital punishment case, in spite of the fact that there was error where the error was of no real consequence. Here, I am of the opinion that the defendant received a fair trial, even if not a perfect one or a satisfactory one.

I would affirm the conviction and remand the case to the Court of General Sessions of Horry County for the purpose of imposing seven sentences representing violations of the law for delivering magazines to seven separate stores.