24149

The STATE, Respondent v. Jerry EVANS, Appellant
(450 S.E. (2d) 47)

Supreme Court

*Deputy Chief Attorney Joseph L. Savitz III*, of *South Carolina Office of Appellate Defense*, and *James M. Morton*, Columbia *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Rakale Buchanan Smith*, and *Sol. Richard Harpootlian*, Columbia, *for respondent.*

Heard April 5, 1994.

Decided Oct. 3, 1994. Reh. Den. Nov. 2, 1994.

TOAL, Justice:

Jerry Evans (Evans) appeals several convictions arising out of a motor vehicle accident, claiming that numerous trial errors require reversal. We disagree and affirm.

## FACTS

Shortly before noon on July 18, 1991, Lauren and Larrae Bernardo received fatal injuries when they were struck by a truck as they walked along Hardscrabble Road with their grandparents. Two other grandchildren were also injured. The truck did not stop and was last observed by the children's grandfather (Grandfather) turning left onto Clemson Road.

After an intense investigation, police charged Evans with two counts of murder, two counts of felony driving under the influence, two counts of leaving the scene of an accident in-

volving death, and two counts of leaving the scene of an accident involving personal injury. Police also charged Evans' brother-in-law, Victor Altman (Altman), who allegedly was a passenger in the truck, with two counts of misprision of felony.

A joint trial was commenced on April 20, 1992. The State presented evidence that the children were struck by a blue and silver 1983 or 1984 Chevrolet pickup truck with "stacked" headlights that had toolboxes and a ladder rack mounted in the bed. Although the truck was never found, several witnesses verified that Evans was known to have a truck matching that description. Other witnesses testified that they observed a blue and silver pickup truck in the area around the time of the accident. One motorist testified that a Chevrolet pickup with "a faded blue or real light silver color" tailgate passed him in a curve and then turned onto Thornton Drive. Another witness testified that he was visiting a relative next door to Evans' residence on Thornton Drive at around 12:30 p.m. when a blue and silver pickup truck with damage on the right front sped into Evans' driveway. This witness, who was familiar with both Evans and Altman, stated that Evans was driving. Altman was the passenger, and the truck had what appeared to be red paint in the damaged area. The State also presented a witness who testified that Evans discussed the accident with him while they were incarcerated together. According to this witness, Evans admitted that he had been drinking, took his eyes off the road for a moment, and hit the children.

Based on this evidence, the jury convicted Evans of two counts each of manslaughter, leaving the scene of an accident involving death, and leaving the scene of an accident involving personal injury. Evans appealed.

## LAW/ANALYSIS

### Codefendant's Confession

A witness for the State testified that Altman discussed the accident with him and made the statement, "I wasn't driving anyway." Evans contends that the statement implicates him as the driver and, because Altman did not testify at trial, the admission of this testimony violated

the Confrontation Clause under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. (2d) 476 (1968). We disagree.

In *Bruton* the Supreme Court held that a defendant's rights under the Confrontation Clause are violated by the admission of a non-testifying codefendant's statement that expressly inculpates a defendant, even if a cautionary instruction is given. *See Bruton*, 391 U.S. at 135-36, 88 S.Ct. at 1627-28. The Court, in *Richardson v. Marsh*, specifically declined to extend this rule to the situation when a defendant's name or any reference to defendant is redacted, even though the statement's application to him is linked up by other evidence properly admitted against the defendant. 481 U.S. 200, 207, 107 S.Ct. 1702, 1707, 95 L.Ed. (2d) 176 (1987).

Under *Richardson*, admission of the inferentially incriminating codefendant's confession which redacts any reference to the defendant does not violate the Confrontation Clause if a proper limiting instruction is given. *Id.* at 211, 107 S.Ct. at 1709. Based on the analysis in *Richardson*, we find that *Bruton* does not bar the statement presented here. The statement did not "on its face" incriminate Evans, although its incriminating import was certainly inferable from other evidence that was properly admitted against him.[1] *See United States v. Williams*, 936 F. (2d) 698 (2nd Cir. 1991) (Adopting the reasoning of *Richardson*, Confrontation Clause is not violated by the admittance of redacted confessions when the statement standing alone does not otherwise connect co-defendants to the crimes.). Accordingly, its admission did not violate *Bruton*.[2]

## Posthypnotic Testimony

In the initial stages of the investigation, police subjected Grandfather to hypnosis in an effort to obtain a better description of the truck. Evans contends that

---

[1] Unlike *Richardson*, the trial judge here did not give a limiting instruction. However, Evans did not request one nor make the argument here that the failure to give a limiting instruction was error and, therefore, it has been waived. *See State v. Hoffman*, ___ S.C. ___, 440 S.E. (2d) 869 (1994) (issue which has not been raised to the trial judge is not preserved for appellate review).

[2] Under the dissent's analysis, a nontestifying codefendant's statement should always be redacted to omit any reference to the defendant. Such a rule would "unduly handcuff the government's ability to introduce admissible confessions and statements against a declarant in a joint trial." *United States v. Strickland*, 935 F. (2d) 822, 826 (7th Cir.), *cert denied*, ___ U.S. ___, 112 S.Ct. 324, 116 L.Ed. (2d) 265 (1991).

the trial judge erred in allowing Grandfather to testify at trial because posthypnotic testimony is inadmissible *per se* under *State v. Pierce*, 263 S.C. 23, 207 S.E. (2d) 414 (1974). We disagree.

*Pierce* addressed the question whether persons present during hypnosis could testify as to the results of the examination. The Court adhered to the general rule that "testimony as to the results of hypnotic examination is not admissible if offered for the truth of the matter asserted," and held that the trial judge did not abuse his discretion in excluding the testimony. *Id.* at 30, 207 S.E. (2d) at 418. Importantly, *Pierce* is limited to the testimony of persons other than the declarant when that testimony is to be admitted for the truth of the matter asserted. Contrary to Evans' assertion, *Pierce* does not prohibit a *declarant* from testifying according to his own recollection. Therefore, we reject Evans' claim that Grandfather's testimony was inadmissible under *Pierce*.

■ Evans also raises the novel claim that admission of Grandfather's posthypnotic testimony violated the Confrontation Clause. We disagree.

■ We are aware that dangers exist with the use of hypnosis as an investigative tool[3] and that courts have taken divergent views as to the admissibility of posthypnotic testimony. Evans urges us to adopt the view that posthypnotic testimony is inadmissible unless stringent safeguards are followed to ensure reliability of the hypnotic procedure. *See, e.g., State v. Hurd*, 86 N.J. 525, 432 A. (2d) 86 (1981).[4] Al-

---

[3] The three testimonial dangers associated with hypnosis are suggestibility, confabulation, and memory hardening. Suggestibility refers to the possibility that the hypnotized person may be susceptible to suggestions from the hypnotist or questioner. Confabulation involves a subject's tendency to fill in missing details in an attempt to make an account more plausible and coherent. Memory hardening refers to the danger that the hypnotist may so firmly implant an impression that a witness is incapable of reexamining it under cross-examination or otherwise. *McQueen v. Garrison*, 814 F. (2d) 951, 956 (4th Cir.,), *cert. denied*, 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed. (2d) 359 (1987).

[4] *Hurd* requires that: 1) hypnosis be administered by a psychiatrist or psychologist experienced in hypnosis; 2) the hypnotist be independent of and not regularly employed by the prosecutor, investigation, or defense; 3) any information given to the hypnotist be recorded for purposes of determining what the hypnotist could have communicated to the witness directly or through suggestion; 4) the witness' recollection of the facts be recorded prior to hypnosis; 5) all contacts between the hypnotist and the witness be recorded; and 6) only the hypnotist and the subject be present during any phase of the hypnotic session. *Hurd*, 86 N.J. at 545-6, 432 A. (2d) at 96-7.

though adherence to the procedures enunciated in *Hurd* is preferable, we do not find the question whether admission of posthypnotic testimony violates the Confrontation Clause answered solely by evaluating the procedures used in the hypnosis session. *See Harker v. State of Maryland*, 800 F. (2d) 437 (4th Cir. 1986) (admissibility of posthypnotic testimony is not determined merely by reliability or non-reliability of procedures used). The Confrontation Clause guarantees a criminal defendant the right to confront witnesses against him. Consequently, to determine whether the admission of posthypnotic testimony violates the Confrontation Clause, we must examine whether hypnosis affected the witness's ability to testify and respond freely to cross-examination. *See McQueen v. Garrison*, 814 F. (2d) 951, 958 (4th Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed. (2d) 359 (1987). If posthypnotic testimony is shown to be independent of the dangers associated with hypnosis, the admission of the testimony does not violate the Confrontation Clause.

To determine whether a witness's testimony is independent of the dangers associated with hypnosis, a court must examine whether: 1) the witness's trial testimony was "generally consistent" with prehypnotic statements, 2) considerable circumstantial evidence corroborates the witness's posthypnotic testimony, and 3) the witness's responses to examination by counsel "generally were not the automatic responses of a preconditioned mental process." *Id.* at 959-61. Because this is a novel issue in South Carolina, we instruct the Bench and Bar that in the future any determination as to the admissibility of posthypnotic testimony should be made *in camera*. If the trial judge determines that such evidence is admissible, the parties may fully explore questions of credibility before the jury.[5]

In this case, Grandfather's posthypnotic recollection of the accident differs from his prehypnotic recollection only in that

[5] We decline to adopt the rule urged by the dissent that a statement obtained in violation of every procedural safeguard outlined in *State v. Hurd*, 86 N.J. 525, 432 A. (2d) 86 (1981), is *per se* inadmissible. We find that such a rule would foreclose whatever investigative benefits may be derived from the responsible use of hypnosis. *Harker* at 441. Rather, the procedure outlined above is a more balanced one that addresses whether the in-court testimony of a previously hypnotized witness has a basis which is in fact independent of hypnotic influence. *See id.*

he was able to recall the color of the driver's hair and more accurately recall the color of the truck after hypnosis. In all other respects, Grandfather's recollection of the accident remained unchanged. Importantly, Grandfather's post-hypnotic testimony is corroborated by physical evidence found at the scene and the testimony of other witnesses. Further, Grandfather's uncertain responses to both direct and cross-examination indicate that his testimony was not the automatic response "of a preconditioned mental process." Therefore, we find that Grandfather's testimony was independent of the dangers associated with hypnosis and conclude that the trial judge did not abuse his discretion in admitting the testimony.

## Expert Testimony

Evans contends that the trial judge erred in allowing an expert to render an opinion that Evans was impaired by alcohol and crack cocaine at the time of the accident. According to Evans, the hypothetical question did not contain facts sufficient to allow the expert to formulate an opinion. We disagree.

A witness testified that Evans shared one gram of crack cocaine with four other people and consumed approximately twelve cans of beer during the period between 10:00 p.m. the night before the accident and 4:00 a.m. the day of the accident. The State then called an expert to correlate the amount of alcohol and drugs ingested with a level of impairment. To elicit the expert's opinion, the solicitor asked the following hypothetical question:

Q: Doctor, let me give this hypothetical to you. Between ten p.m. and four a.m. the consumption of twelve Budweiser beers of that size which is a twelve ounce?

A: Twelve ounce.

Q: Twelve ounce beers. Then at approximately beginning at ten o'clock until whenever they finished five people share one half a gram of crack cocaine. Smoked it. And then at approximately one thirty a.m. again five people shared smoking a half a gram of cocaine. The hypothetical person we are talking about would have had then twelve beers and shared a half a gram with five people and a half a gram with five people. Okay? The question then becomes and can you tell me with a degree, a reasonable degree of

medical certainly whether or not that person's ability to operate a motor vehicle sometime between eleven forty-five and noon stopping at four a.m. would have been appreciably impaired? Can you first of all say yes or no to that question and then I'll let you explain?

On cross-examination, the expert testified that his opinion was based on an average-sized individual consuming average-purity cocaine.

An expert may give an opinion base upon personal observations or in answer to a properly framed hypothetical question that is based on facts supported by the record. *State v. Burton*, 302 S.C. 494, 397 S.E. (2d) 90 (1990); *State v. King*, 222 S.C. 108, 71 S.E. (2d) 793 (1952). Although some of the details assumed in the hypothetical question may not have been specifically proven, there is no error in permitting an expert to give his opinion in response to the question if the material facts assumed were within the range of the evidence. *See Ballew v. Liberty Life Ins. Co.*, 270 S.C. 301, 241 S.E. (2d) 907 (1978). We find no error in allowing the expert to render an opinion that Evans was under the influence at the time of the accident.

## Hearsay

Evans next contends the trial judge erred in allowing a police investigator to testify that debris found at the scene came from a 1983 or 1984 Chevrolet pickup. According to Evans, the investigator was relating only what he was told by employees of automobile dealerships and, therefore, admission of the investigator's testimony violated the Confrontation Clause. We disagree.

The investigator testified that he contacted local truck dealerships and with their assistance was able to develop an opinion that debris found at the scene came form a 1983 or 1984 Chevrolet truck. This conclusion, although facilitated by the investigator's contact with truck dealers and manufacturers, was based on *personal* observations made when comparing parts found at the scene with those found on many different trucks. Contrary to Evans' assertion, the record conclusively shows the investigator was not merely relating what he was told by others. Accordingly, we reject Evans' claim that the testimony was hearsay and find no violation of the Confrontation Clause.

## Exculpatory Testimony

Evans finally contends that the trial judge erred in refusing to allow three prison inmates to testify that another inmate said he was the driver who hit the children. We disagree.

In *State v. Doctor* 306 S.C. 527, 413 S.E. (2d) 36 (1992), we followed Federal Rules of Evidence Rule 894(b)(3) and held that out-of-court statements by an unavailable declarant offered to exculpate a criminal defendant are admissible only if corroborating evidence clearly indicates the trustworthiness of the statements. Here, Evans stipulated that he had no evidence to corroborate the declarant's statements and that the declarant would take the stand and deny committing the offenses. Therefore, because there was no evidence to corroborate the statement and the declarant was not unavailable, we find the trial judge correctly ruled that the witnesses' testimony was inadmissible.

Evans also contends that the trial judge erred in refusing to call the inmate who claimed to be the driver as a court's witness so he could be impeached with testimony that he had confessed to the crime. We disagree

In *State v. Anderson,* 304 S.C. 551, 406 S.E. (2d) 152 (1991), we established the following prerequisites for a court's witness: 1) the prosecution is unwilling to vouch for the veracity or integrity of the witness, 2) there is a close relationship between the accused and the prospective Court's witness, 3) there is evidence that the proposed witness was an eyewitness to the act giving rise to the prosecution, 4) the witness gave a sworn statement concerning the relevant facts which have been or will probably be contradicted, and 5) the absence of the witness's testimony would likely result in a miscarriage of justice. *See also Riddle v. State,* ___ S.C. ___, 443 S.E. (2d) 557 (1994). Here, the proposed witness had not given a sworn statement. Therefore, the trial judge did not err in refusing to call him as a court's witness.

For the foregoing reasons, Evans' conviction are

Affirmed.

CHANDLER, Acting C.J., MOORE, J., and WILLIAM H. BALLANGER, Acting Associate Justice, concur.

FINNEY, J., dissenting in part and concurring in part.

FINNEY, Justice:

I respectfully dissent from that part of the majority opinion which upholds the admission of the co-defendant's statement. In my opinion, the admission of Altman's statement, "I wasn't driving anyway" violated Evans' Confrontation Clause rights.

Evans was charged with driving the vehicle which killed the children: Altman merely with misprision of felon, that is, the failure to report Evan's crime. There was physical evidence placing Altman at the scene, and evidence that there were two people in the truck when the children were struck. The trial judge redacted the explicit reference in Altman's statement naming Evans as the driver, but refused to redact the statement that Altman was not the driver, an indisputable reference to the existence of an additional person. Although not named that person could only be Evans.

A nontestifying codefendant statement need not name the defendant in order to incriminate him. *State v. Singleton*, 303 S.C. 313, 400 S.E. (2d) 487 (1991) (redaction of appellant's name but not his general physical description violated appellant's Confrontation Clause rights); *see also State v. LaBarge*, 275 S.C. 168, 268 S.E. (2d) 278 (1980) [substitution of "Mr. X" for defendant's name would not satisfy *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. (2d) 476 (1968)]. In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed. (2d) 176 (1987), the Supreme Court held that the redaction of *any reference* to the *existence* of another defendant satisfies the Confrontation Clause, even if other evidence links the defendant to the crime where a proper limiting instruction is given. *Id.* (Emphasis added.) Here, the redaction is incomplete and unequivocally indicates the presence of another, more culpable individual. Further, there was no contemporaneous limiting instruction.[1] Under the circumstances of this case, Altman's statement, fairly understood, incrimi-

---

[1] Under the circumstances of this case, Evans was not under an obligation to request a limiting instruction in order to preserve this issue for appeal. After a statement is properly redacted, a limiting instruction should be given. Since the trial judge refused to redact the statement, Evans was not required to make the futile gesture of asking for an instruction. *State v. Bryant*, 447 S.E. (2d) 852 (1994).

nates Evans. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. (2d) 476 (1968). I would reverse on this ground. *State v. Singleton,* supra.

I concur in the majority's conclusion that neither the admission of the Grandfather's posthypnotic statement regarding the truck's color nor the admission of the "expert" testimony of intoxication require reversal, albeit for different reasons. I would hold that a statement obtained, as was the Grandfather's, in violation of *every* procedural safeguard outlined in *State v. Hurd*, 86 N.J. 525, 432 A. (2d) 86 (1981), is *per se* inadmissable. The majority holds that a trial judge may admit such a statement if she determines that it is "more accurate," that is, that it better reflects the "true facts" in the case. Such a determination requires the trial judge to make an inappropriate intrusion into the jury's province to decide the facts. I would hold that the trial judge erred in admitting the Grandfather's posthypnotic recollection of the truck's color because it was obtained without proper procedural safeguards, but that the admission was harmless error in light of Evans' attorney's concession in his closing argument that the color of the vehicle which struck the children was simply not a contested issue. *State v. Shaw*, 258 S.E. 236, 188 S.E. (2d) 186 (1972).

Further, any error in the admission of the "expert" testimony on intoxication is harmless under the facts of this case. Evans was charged with felony DUI but convicted only of the lesser offense of involuntary manslaughter.[2] The jury was told by the solicitor[3] that if it returned an involuntary manslaughter verdict, that would mean it found Evans was not under the influence of drugs or alcohol. The jury did return such a verdict, and thus obviously did not accept the "expert" testimony. Any error in its admission was harmless beyond any doubt. *See State V. Rochester,* 301 S.E. 196, 391 S.E. (2d) 244 (1990) (any error in admission of evidence of sexual intercourse harmless where judge directed a verdict on criminal sexual conduct charge).

Finally, the majority finds no error in the trial judge' re-

---

[2] This case was tried before we decided *State v. Cribb*, ___ S.C. ___, 426 S.E. (2d) 306 (1992), in which we reversed our earlier cases, and held involuntary manslaughter was no longer a lesser included offense of felony DUI.

[3] Arguments of counsel is considered by this Court in interpreting a jury's verdict. *State v. Jefferies,* 446 S.E. (2d) 427 (S.C. 1994).

fusal to calling an inmate as a Court's witness. In my opinion, the test for calling a Court's witness outlined in *State v. Anderson*, 304 S.C. 551, 406 S.E. (2d) 152 (1991) and *Riddle v. State*, ___ S.C. ___, 443 S.E. (2d) 557 (1994) is simply unworkable where, as here, it is the defense rather than the State which wishes to have the witness called. Despite my reluctance to apply the *Anderson* test, neither party has questioned its applicability either before us or at trial. Accordingly, I would find no error in the judge's refusal to exercise his authority because the proposed witness did not meet *Anderson* prerequisites 2, 4, and 5.

For the foregoing reasons, I dissent in part and concur in part.