***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. On February 3, 2000 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time an employment relationship existed between plaintiff and defendant-employer.
3. Zenith Insurance Company was the carrier on the risk for defendant-employer on February 3, 2000.
4. On February 3, 2000 plaintiff suffered a compensable injury to his back. Defendants filed a Form 63 and accepted the claim by paying indemnity and medical compensation consistent with the same beyond the statutory deadline for contesting the claim as set forth in N.C. Gen. Stat. § 97-18(d).
5. Defendant-employer does not currently employ the plaintiff.
6. Plaintiff has been paid the maximum weekly compensation rate for 2000, $588.00. The parties stipulate this is the appropriate compensation rate.
7. All parties have been correctly designated, and there is no question as to misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
8. Dr. DuPuy, plaintiff's authorized treating physician, assigned a five percent (5%) permanent partial impairment rating to the back. Plaintiff obtained a second opinion on the rating from Dr. Humble, who assigned a ten percent (10%) permanent partial impairment rating to the back.
9. Defendants filed a Form 24 Application to Terminate or Suspend Payment of Compensation on or about May 7, 2001, which was disapproved by Special Deputy Commissioner Myra L. Griffin on July 17, 2001.
10. Defendants filed a Form 33 Request for Hearing on the grounds that plaintiff was not disabled on May 7, 2001, and was not entitled to ongoing indemnity benefits. However, defendants have paid ongoing indemnity compensation in compliance with the North Carolina Workers' Compensation Act.
11. All medical records dated on or before May 7, 2001, and all Industrial Commission forms dated on or before May 7, 2001, including documents submitted by the parties regarding the subject Form 24 Application, as provided to Deputy Commissioner Rowell on August 27, 2002, are genuine and may be received into evidence without further identification or proof.
12. The parties placed a condition to the admission of Stipulated Exhibit #2, which reads as follows: Any medical record subsequent to May 7, 2001, will not be approved or considered by the parties or the Commission for purposes of this decision.
13. The parties agree that the sole issues to be decided by the Industrial Commission are:
I. Whether plaintiff was disabled on May 7, 2001 and thereby entitled to ongoing indemnity compensation; and
II. Whether defendants engaged in improper contact with plaintiff's treating physicians prior to May 7, 2001, as described in the relevant portions of plaintiff's motion in limine.
14. The parties stipulate into evidence as Stipulated Exhibit #1, the Consent Order filed October 3, 2001.
15. The parties stipulate into evidence as Stipulated Exhibit #2, documentation identified as stipulated exhibits, and by written condition placed upon the admission of this exhibit #2, and agreed to be the parties.
16. Subsequent to the hearing, it was determined that part of the stipulated exhibits agreed to at the August 27, 2002, hearing were not contained in the record evidence. A conference call was held before the Deputy Commissioner, and the plaintiff's motion in limine and motion for change of current treating orthopedic physician were provided. This documentation was marked as Stipulated Exhibit #3, and made a part of the record.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained in Depositions of Dr. DuPuy and Dr. Dickerson are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
Pursuant to the provisions of Salaam v. North CarolinaDepartment of Transportation, 122 N.C. App. 83, 468 S.E.2d 536
(1996) disc. review improvidently allowed, 345 N.C. 494,480 S.E.2d 51 (1997), all portions of Dr. Dickerson's medical records and deposition testimony that occurred after February 28, 2001, the date of the nonconsensual ex parte communication, are excluded and not considered in the decision in this matter. Furthermore, all portions of Dr. DuPuy's medical records and deposition testimony that occurred after March 12, 2001, the date of the nonconsensual ex parte communication, is excluded and not considered in the decision in this matter, pursuant to Salaam.Id.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 3, 2000, plaintiff sustained an admittedly compensable injury by accident to his back.
2. Following plaintiff's February 3, 2000, compensable injury by accident, defendants provided appropriate medical treatment to plaintiff. Dr. David DuPuy of Charlotte Orthopedic Specialists first saw plaintiff on February 16, 2000, where he presented with low back pain. Plaintiff continued to be treated conservatively by Dr. DuPuy, however plaintiff continued to experience ongoing pain.
3. Dr. DuPuy referred plaintiff to Dr. Elmer Pinzon, a physiatrist, also with Charlotte Orthopedic Specialists. Dr. Pinzon continued to provide conservative treatment for plaintiff. Dr. Pinzon's treatment and diagnostic testing of plaintiff included, but was not limited to, performing a discogram, nerve blocks, and an IDET procedure. Plaintiff's condition did not improve with the conservative treatment provided by Dr. Pinzon.
4. Following plaintiff's February 3, 2000, injury by accident, and during the period of time plaintiff was being provided his medical treatment, Dr. DuPuy continued to be plaintiff's primary treating physician.
5. On January 29, 2001, plaintiff was examined by Dr. DuPuy and presented with continued low back pain. At the time of this visit, plaintiff had not returned to work. After his examination of plaintiff, Dr. DuPuy assigned plaintiff work restrictions. These work restrictions were lifting no greater than five pounds with no prolonged bending, stooping, squatting, or kneeling, and no pushing or pulling greater that ten 10 pounds. On that same date, Dr. DuPuy informed plaintiff that he would refer him for a surgical evaluation to Dr. Leon Dickerson. On January 29, 2001, Dr. DuPuy stated that if Dr. Dickerson recommends no specific treatment, then he would recommend vocational rehabilitation for appropriate modified employment.
6. On February 20, 2001, plaintiff was seen by Dr. Dickerson, also of Charlotte Orthopedic Specialists, upon referral by Dr. DuPuy for a surgical evaluation. Following his examination of plaintiff, Dr. Dickerson stated that surgery was appropriate for plaintiff. On February 20, 2001, Dr. Dickerson stated on a work status report that plaintiff was unable to work until after surgery. Dr Dickerson only examined plaintiff this one time.
7. Following his February 20, 2001, surgical evaluation of plaintiff, Dr. Dickerson received a letter dated February 28, 2001, from Kent Snelson, Senior Claims Representative for defendant-carrier, Zenith Insurance Company. Enclosed in this February 28, 2001, letter was a copy of a surveillance videotape of plaintiff. This letter does not show that it was copied to plaintiff's attorney. There was no evidence presented that plaintiff's attorney consented to this letter being sent to Dr. Dickerson. There was also no evidence presented that plaintiff's attorney gave consent for Dr. Dickerson to review this surveillance videotape of plaintiff outside the presence of plaintiff or plaintiff's attorney.
8. Following Dr. DuPuy's last examination of plaintiff on January 29, 2001, and prior to his next appointment with plaintiff on March 19, 2001, Dr. DuPuy received a letter dated March 12, 2001, from Kent Snelson, defendants' Senior Claims Representative. This letter had enclosed a surveillance videotape of plaintiff. This letter does show that plaintiff's attorney was copied on this correspondence to Dr. DuPuy. However, there is no evidence presented to show that plaintiff's attorney had consented to this letter being sent to Dr. DuPuy. Furthermore, there was no evidence presented to show that plaintiff's attorney gave consent for Dr. DuPuy to review this surveillance videotape of plaintiff outside the presence of plaintiff or plaintiff's attorney.
9. The February 28, 2001 letter sent to Dr. Dickerson and the March 12, 2001, letter sent to Dr. DuPuy by Kent Snelson, defendant's Senior Claims Representative, were the same in content, and each contained the same surveillance videotape of plaintiff. The content of these letters read as follows:
Dear Dr. Dickerson/Dr. DuPuy:
 Enclosed is a copy of the video we had taken of Mr. Desmarais. Prior to looking at this video, the only report of the employee's physical limitations were from discussions over the phone with him or the description by his doctors. I had an idea that he was much more limited that he appears in the video. I would like for you to view this video and inform us as to whether Mr. Desmarais presents in his appointments the same way he does in the video.
 Thank you for taking the extra time to answer these questions.
 If any additional information is needed, please have a representative of your office contact me at 704-567-7488.
Very truly yours,
 Kent Snelson Zenith Insurance Company Senior Claims Representative P.O. Box 25700 Charlotte, NC 28229-5700 Telephone 704/567-7400 KS/ks Fax 704/567-7463
10. The surveillance videotape of plaintiff sent to both Dr. Dickerson and to Dr. DuPuy was reviewed by both doctors at the same time and setting on or before March 14, 2001.
11. Dr. Dickerson testified in his deposition that he did review this surveillance videotape of plaintiff after he had examined plaintiff on February 20, 2001, and after he had made his recommendations based upon his February 20, 2001, evaluation of plaintiff. Dr. Dickerson testified that he did rely on his review of this videotape in forming his medical opinions of plaintiff following February 20, 2001. Dr. Dickerson testified that his review of this videotape did influence his medical opinion regarding plaintiff's level of pain, as his activity in the video was not consistent with plaintiff's presentation in his office on February 20, 2001.
12. Without further examination of plaintiff, following February 20, 2001, Dr. Dickerson, or a member of his staff, authorized a computer generated work status report releasing plaintiff to return to work without restrictions on May 7, 2001. Dr. Dickerson testified that he had been influenced by his review of plaintiff's surveillance video, and as a result he released plaintiff to return to work without restrictions on May 7, 2001. The May 7, 2001, work status report was not signed by Dr. Dickerson. Dr. Dickerson testified in his deposition that it is unusual for such reports not to be signed. Dr. Dickerson testified that the only evidence which would support his opinion that plaintiff was released to return to work without restrictions on May 7, 2001, was the unsigned computer generated work status note.
13. Dr. DuPuy testified that as a result of the letter and the video, he entered a medical note on plaintiff on March 14, 2001. Dr. DuPuy stated that he did not see plaintiff after he saw the video and before he wrote the note of March 14, 2001. Dr. DuPuy indicated that prior to this March 14, 2001, medical note, that plaintiff's work status was the status that he had previously given plaintiff on January 29, 2001.
14. Following his review of the surveillance videotape of plaintiff, Dr. DuPuy noted his impressions in a March 14, 2001, medical note, where he stated that his indications for surgery for plaintiff were based upon his reliance of plaintiff being forthright in reporting when he was having pain. Dr. DuPuy stated his review of the surveillance video gave him the impression that plaintiff could do more than the history he gave as to what he could do. Dr. DuPuy further stated that after viewing the video, his impression was that plaintiff has much less pain than he had relayed during his previous examinations. Finally, Dr. DuPuy stated that his impression after viewing the video was that surgery was no longer indicated for plaintiff.
15. A review of the content of the letter sent to Dr. Dickerson and to Dr. DuPuy reveals that its purpose, along with the enclosed videotape of plaintiff, was to provide information to the doctors. In addition, the letter requests a response from the doctors following their review of the videotape of plaintiff. This information was provided to the doctors without plaintiff's prior viewing or opportunity to prepare a response to this videotape, and without plaintiff's presence at the time that the doctors viewed the videotape. Defendants' attempt to provide this information by means of a nonconsensual ex parte contact is improper.
16. The Full Commission finds that defendants, through their use of these letters and videotape, sought to add information to the knowledge of these doctors with the knowledge that such information was derived outside of the privacy and confidential relationship between the plaintiff and his doctors. Such communication can only be characterized as improper ex parte
communication. There are more proper methods available to defendants, including discovery, which will adequately and ultimately achieve the same purposes sought here by defendants. 17.17.The medical opinions of Dr. Dickerson and Dr. DuPuy were directly and significantly influenced by the ex parte
communication provided to them by defendants. As such, any medical records and testimony following and related to these communications are tainted and will be excluded as evidence.
18. As to Dr. Dickerson, the date of the communication by defendants was on February 28, 2001. Therefore, any medical records of Dr. Dickerson following February 28, 2001, are tainted and will be excluded and not considered for purposes of this decision. Furthermore, any portions of the deposition testimony of Dr. Dickerson tainted by the nonconsensual ex parte
communication will be excluded and not considered for purposes of this decision.
19. As to Dr. DuPuy, the date of the communication by defendants was on March 12, 2001. Therefore, any medical records of Dr. DuPuy following March 12, 2001, are tainted and will be excluded and not considered for purposes of this decision. Furthermore, any portions of the deposition testimony of Dr. DuPuy tainted by this nonconsensual communication will be excluded, and not considered for purposes of this decision.
20. Because the Commission has excluded the opinions of Drs. Dickerson and DuPuy regarding plaintiff's change of condition, which were made in reaction to an ex parte communication, there is no evidence of record upon which the Commission can make a determination as to plaintiff's present condition. Defendants have argued that the video surveillance of plaintiff should be sufficient evidence as to plaintiff's condition and functional capacity. The video depicts plaintiff in the course of normal, day-to-day activities, which include: taking out the trash, driving, grocery shopping, and visiting an auto parts store. However, without expert medical testimony to interpret plaintiff's condition and functional capacity as exhibited in the video, any decision of the Commission on such issues would be improperly based upon speculation and conjecture. Thus, based on the evidence of record, the Full Commission finds that plaintiff continued to sustain temporary total disability at the time of the hearing before the Deputy Commissioner and continuing until further order of the Commission, as a result of the February 3, 2000, compensable injury by accident to his back.
21. In light of the substantial influence the ex parte
communications had on Drs. DuPuy and Dickerson, plaintiff's current treating physicians, reasonable grounds exist to allow plaintiff to select a treating orthopedist of his own choosing to attend and assume the medical care necessitated by his February 3, 2000 compensable back injury.
22. Defendants brought this case to hearing before the Deputy Commissioner without reasonable grounds for doing so.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendants engaged in impermissible nonconsensual ex parte
communications with plaintiff's treating physicians, Drs. DuPuy and Dickerson. The medical opinions of Drs. Dickerson and DuPuy were significantly influenced by such improper communication. SeeSalaam v. N.C. Dept. of Transportation, 122 N.C. App. 83,468 S.E.2d 536, disc. review improvidently allowed, 345 N.C. 494,450 S.E.2d 51 (1997); Porter v. Fieldcrest Cannon, Inc.,133 N.C. App. 23, 514 S.E.2d 517 (1999); Crist v. Moffatt, 326 N.C. 326,389 S.E.2d 41 (1990).
2. The medical records of Dr. Dickerson following February 28, 2001, are excluded and not considered for purposes of this decision. Furthermore, any portions of the deposition testimony of Dr. Dickerson tainted by the nonconsensual ex parte
communication are excluded and not considered for purposes of this decision. Salaam v. N.C. Dept. of Transportation,122 N.C. App. 83, 468 S.E.2d 536, disc. review improvidently allowed,345 N.C. 494, 450 S.E.2d 51 (1997).
3. The medical records of Dr. DuPuy following March 12, 2001, are excluded and not considered for purposes of this decision. Furthermore, any portions of the deposition testimony of Dr. DuPuy tainted by the nonconsensual ex parte communication are excluded and not considered for purposes of this decision. Salaamv. N.C. Dept. of Transportation, 122 N.C. App. 83,468 S.E.2d 536, disc. review improvidently allowed, 345 N.C. 494,450 S.E.2d 51 (1997).
4. Plaintiff continued to sustain temporary total disability at the time of the hearing before the Deputy Commissioner and continuing until further order of the Commission, as a result of the February 3, 2000, compensable injury by accident to his back. N.C. Gen. Stat. § 97-29.
5. Reasonable grounds have been shown to allow plaintiff to select a treating orthopedist of his own choosing. N.C. Gen. Stat. § 97-25.
6. Defendants brought this case to hearing before the Deputy Commissioner without reasonable grounds for doing so, and plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay to plaintiff temporary total disability at the rate of $588.00 per week until further order of the Commission, as a result of the February 3, 2000, compensable injury by accident to plaintiff's back.
2. Defendants shall continue to pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability.
3. Plaintiff is entitled to select a new treating orthopedist.
4. Pursuant to N.C. Gen. Stat. 97-88.1, defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of 25% of all compensation due plaintiff during the period of May 7, 2001, the date defendants filed the Form 24 in this matter, to the filing date of this Opinion and Award by the Full Commission. Said fees shall be paid directly to plaintiff's counsel and not deducted from the aforesaid award to plaintiff. In other words, defendants shall continue paying $588.00 per week without offset for the attorney fee ordered by this paragraph.
5. The Full Commission shall retain jurisdiction in this matter to address plaintiff's ongoing disability.
6. Defendants shall pay the costs, including the expert medical testimony fee for Dr. DuPuy in the amount of $610.00, and the expert medical testimony fee for Dr. Dickerson in the amount of $500.00.
This 15th day of March 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER