***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The date of this admittedly compensable injury is December 11, 2001.
2. Defendant filed an Industrial Commission Form 60 dated February 12, 2002, admitting plaintiff's right to compensation for injury by accident to his left knee on December 11, 2001.
3. Defendant paid various amounts of temporary total and/or temporary partial disability benefits to plaintiff from January 7, 2002 through November 16, 2002.
4. Defendant has not paid either total or temporary partial disability benefits subsequent to November 16, 2002.
5. Plaintiff was terminated by defendant-employer on February 18, 2003.
6. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
7. On all relevant dates, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
8. On all relevant dates, defendant-employer regularly employed three or more employees in North Carolina.
9. On all relevant dates, defendant-employer was a duly qualified self-insured employer under the North Carolina Workers' Compensation Act, with Hewitt-Coleman Associates acting as its third-party administrator.
10. On all relevant dates, plaintiff's average weekly wage is $540.68, resulting in a compensation rate of $360.47.
11. At the hearing, the parties submitted a Packet of Documents that included Medical Records, Defendant's responses to Plaintiff's First Set of Interrogatories, Defendant's responses to Plaintiff's Second Set of Interrogatories, Plaintiff's 2002 W2 Form, Plaintiff's 2003 year-to-date earnings statement, Plaintiff's responses to Defendant's' interrogatories and request for production, The Employment Security Commission's records on plaintiff; Industrial Commission forms relevant to plaintiff's claim for benefits, and; various items of correspondence between the parties, which was admitted into the record, and marked as Stipulated Exhibit (2).
12. Plaintiff submitted an Industrial Commission Form 25T with accompanying documents, which was admitted into the record, marked as Plaintiff's Exhibit (1).
13. Defendant submitted the following:
a. Defendant-Employer's Attendance Policy, which was admitted into the record, marked as Defendants' Exhibit (1);
b. A March 4, 2003 Correspondence to the Employment Security Commission, which was admitted into the record, marked as Defendants' Exhibit (2);
c. A Memorandum Regarding Transfers to the Siler City Plant, which was admitted into the record, marked as Defendants' Exhibit (3);
d. A Memorandum Regarding Transfers to the Oakland Plant, which was admitted into the record, marked as Defendants' Exhibit (4);
e. A Leave Balance Sheet for 2003, which was admitted into the record, marked as Defendants' Exhibit (5);
f. A February 12, 2003 Associate Consultation Form, which was admitted into the record, marked as Defendants' Exhibit (6);
g. A February 18, 2003 Termination of Employment Form, which was admitted into the record, marked as Defendants' Exhibit (7);
h. A February 13, 2003 Associate Consultation Form, which was admitted into the record, marked as Defendants' Exhibit (8), and;
i. A July 29, 2002 Correspondence from Counsel for Plaintiff, which was admitted into the record, marked as Defendants' Exhibit (9).
14. The issues to be determined are the amount of compensation for total, temporary partial, or permanent partial disability to which plaintiff is entitled, and whether plaintiff is entitled to additional medical compensation.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-four (44) years of age, with his date of birth being October 18, 1958. Prior to the incident giving rise to this claim, plaintiff had been employed by defendant-employer as a weaver for approximately eight (8) years. Defendant-employer is in the business of manufacturing material for upholstery.
2. On December 11, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, which resulted in an injury to his left knee. The injury occurred as plaintiff was stepping off a loom, and was accepted by defendant as compensable through the filing of an Industrial Commission Form 60.
3. As the result of his admittedly compensable injury by accident, plaintiff received medical treatment on December 13, 2001 at Rutherford Hospital from Robert DuCharme, P.A. Based upon an examination, Mr. DuCharme opined that plaintiff could return to light duty work on crutches, and referred plaintiff to an orthopaedic surgeon.
4. The orthopaedic surgeon to whom plaintiff was referred was Dr. John Davis, who initially examined plaintiff on December 18, 2002. Following this examination, Dr. Davis diagnosed plaintiff as having sustained an acute dislocation of his left patella. Dr. Davis recommended surgery for plaintiff's condition. Until that surgery could be performed on January 4, 2002, Dr. Davis provided conservative treatment and released plaintiff to return to full-time light duty work. However, Dr. Davis did not define his interpretation of light duty, and, as a consequence, plaintiff's work and its suitability was determined entirely by defendant-employer. During this period, plaintiff was required to work at least two hours per day so that defendant-employer did not have to report a lost-time accident. Plaintiff's duties as assigned by defendant-employer involved special accommodations, and he primarily worked in the office performing odd jobs.
5. Based upon the credible evidence of record, the work to which plaintiff was assigned during the period of December 18, 2001 through January 4, 2002 was make-work that was not readily available in the competitive job market. Therefore, the work to which plaintiff was assigned during this period did not constitute suitable employment and was not truly indicative of any wage earning capacity.
6. During the period of December 11, 2001 through January 4, 2002, plaintiff was paid by the hour and earned progressively lower wages each week as compared to his pre-injury average weekly wage. This diminution in plaintiff's wage earning capacity was the direct result of his admittedly compensable injury by accident.
7. On January 4, 2002, Dr. Davis performed surgery on plaintiff's left knee, with the procedure consisting of an arthroscopic examination, a debridement of the medial femoral condyle and patella, and an open reefing of the medial retinaculum. Subsequent to this procedure, Dr. Davis prescribed Percocet and opined that plaintiff could return to work on Monday, January 7, 2002. Dr. Davis made this return to work recommendation even though he had restricted plaintiff from driving or operating hazardous machinery or from making business decisions due to his medication. Additionally, plaintiff was to work while wearing his prescribed full-leg and knee immobilizing brace.
8. Despite Dr. Davis' recommendation that plaintiff could return to work on January 7, 2002, defendant-employer required plaintiff to work even on the date of his surgery so that it would not have to report a lost-time incident.
9. Because of his inability to drive, plaintiff did not return to work on January 7, 2002. On January 8, 2002, Dr. Davis modified his return to work recommendation, releasing plaintiff to light duty work for one week beginning at one hour per day with an increase in hours as tolerated. On January 14, 2002, Dr. Davis opined that plaintiff could return to light duty work but did not restrict the number of hours plaintiff could work.
10. Subsequent to January 14, 2002, plaintiff continued to work in this capacity while also continuing to experience pain and other left knee symptoms. Because of these ongoing symptoms, plaintiff often was forced to leave work early or to miss an entire day. When plaintiff was forced to miss work because of his pain symptoms during this period, defendant-employer had plaintiff's attendance record marked as through he had called in sick for that day.
11. On May 7, 2002, plaintiff returned to Dr. Davis with symptoms of a clicking sound and catching in his left knee. At this appointment, Dr. Davis informed plaintiff that he had no further treatment to offer, and plaintiff requested a referral to another physician. Plaintiff's treatment was then transferred to Dr. Jay Jansen, also an orthopaedic surgeon.
12. Dr. Jansen initially examined plaintiff in June 2002. At that time, plaintiff was experiencing pain and swelling in his left knee. As for work restrictions, Dr. Jansen limited plaintiff to modified duty and decreased his hours from twelve to eight per shift. On June 17, 2002, Dr. Jansen further limited plaintiff to fifteen to twenty (15 to 20) minutes of sitting every hour, with no repetitive climbing or stooping. On that date, Dr. Jansen also opined that plaintiff could increase his hours per shift to twelve (12) if he was able to sit the majority of the time. Later in June 2002, Dr. Jansen opined that plaintiff should not to go up and down stairs, bend his knee repetitively, or perform squats, and that he should sit twenty (20) minutes per hour.
13. On August 28, 2002, Dr. Jansen performed arthroscopic surgery on plaintiff's left knee. During this procedure, Dr. Jansen found cartilage wear, or chondromalacia, on the back of plaintiff's kneecap as well as the medial femoral condyle, which is the weight bearing part of the knee. Although the pain, swelling, and popping in plaintiff's left knee improved subsequent to this surgery, he continues to experience these symptoms to some degree.
14. Plaintiff continued to work for defendant-employer through the date of his surgery. As the result of his admittedly compensable injury by accident and the surgery performed by Dr. Jansen, plaintiff was unable to work in his former position with defendant-employer or any other employment during the period of August 28, 2002 to September 3, 2002. On September 4, 2002, plaintiff returned to work for defendant-employer on a graduated basis.
15. On December 9, 2002, Dr. Jansen opined that plaintiff had reached maximum medical improvement, assigned him a ten percent (10%) permanent partial disability rating to his left lower extremity, and released plaintiff to return to work without restrictions. However, plaintiff continued to experience pain and other symptoms with his left knee subsequent to December 9, 2002.
16. Subsequent to November 16, 2002, defendant did not pay total disability compensation or temporary partial disability compensation to plaintiff, contending that plaintiff no longer had any work restrictions as of that date.
17. During 2002, plaintiff earned $18,976.93 while working for defendant-employer, making his average weekly wage for that year $364.94.
18. On February 18, 2003, plaintiff was terminated by defendant-employer, with the stated reason being excessive absences. Defendant-employer had an attendance policy under which it could terminate any employee who missed more than ninety-six (96) hours in a given year. Plaintiff's attendance log indicates that he missed the following dates after "calling in sick": May 25, 2002; May 26, 2002; September 30, 2002; October 1, 2002; November 11, 2002; February 10, 2003; February 12, 2003; February 13, 2003, and February 18, 2003. These dates account for the majority of the ninety-six (96) hours plaintiff could miss before defendant-employer could terminate his employment.
19. The credible evidence of record supports the finding that many of plaintiff's absences that lead to his termination were directly related to his admittedly compensable injury by accident. Accordingly, although defendant-employer's policy was a general one, defendant failed to prove that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Therefore, plaintiff's termination did not constitute a constructive refusal of suitable employment.
20. During the seven (7) week period of January 1, 2003 to February 18, 2003, plaintiff earned $3,749.97, making his average weekly wage for this period $535.71.
21. Subsequent to his termination, plaintiff has made reasonable efforts to locate and secure other employment, including looking for other jobs through the Employment Security Commission.
22. On August 19, 2003, plaintiff underwent an independent medical examination performed by Dr. Jerry Barron, an orthopedist. Following this examination, Dr. Barron opined that plaintiff had at least a partial ACL injury with avulsion of the ligament from the femoral condyle. For this condition, Dr. Barron recommended surgery. Dr. Barron further opined that plaintiff could return to work with restrictions following a functional capacity evaluation.
23. Plaintiff's functional capacity evaluation was conducted on September 26, 2003, and indicated that he could not climb ladders or stairs, crawl, or kneel. It also indicated that plaintiff could walk minimally, and that he was able to stand, but that he had to sit when needed. On September 29, 2003, and based on the functional capacity evaluation, Dr. Barron restricted plaintiff to light duty work as that is defined under Federal Department of Labor standards, and to lifting no more than twenty (20) pounds occasionally from the waist up, with no lifting from the waist down. Additionally, Dr. Barron opined that plaintiff was unable to climb a ladder, or kneel, and that he was able to squat and climb stairs only occasionally. According to Dr. Barron, these restrictions are retroactive from the date of plaintiff's second surgery on August 28, 2002. Dr. Barron also assigned plaintiff a fifteen (15%) permanent partial disability rating to plaintiff's left lower extremity.
24. Although subsequent to his termination defendant-employer had offered plaintiff two jobs, these jobs were not suitable given his work history, physical condition and assigned restrictions. Accordingly, plaintiff justifiably refused these positions.
25. Based upon the credible evidence of record, plaintiff's partially torn ACL in his left knee was the direct and natural result of and causally related to his December 11, 2001 injury by accident. This injury was not addressed during his prior two surgical procedures. As of the date of hearing, plaintiff continued to experience problems with his knee, particularly with going up and down steps and with sitting for prolonged periods. Given these factors, Dr. Barron's opinions regarding plaintiff's partially torn ACL are given more weight than the opinions of Dr. Davis and Dr. Jansen.
26. Based upon plaintiff's current condition, Dr. Barron has opined that he could either undergo vocational rehabilitation, given his permanent work restrictions, or undergo the surgery as recommended.
27. Ms. Becky Stevens is defendant-employer's employment supervisor and human resources manager. Ms. Stevens is not a rehabilitation nurse case manager. The credible evidence of record supports a finding that Ms. Stevens attended many of plaintiff's appointments with Dr. Davis, including being present for actual physical examinations. Ms. Stevens was present in this manner without having obtained plaintiff's consent. Additionally, Ms. Stevens discussed plaintiff's return to work with Dr. Davis outside of plaintiff's presence. These communications by Ms. Stevens with Dr. Davis were non-consensual ex parte communications. Given these factors, Dr. Davis' testimony should be stricken from the record.
28. Defendant has not reimbursed plaintiff for mileage expenses associated with his injury-related travel to and from medical appointments during the period of December 13, 2001 to February 20, 2002. During this period, because of his inability to drive, plaintiff was transported by his wife. The driving of plaintiff by his wife was reasonable and necessary.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The non-consensual ex parte communications of defendant's employee Ms. Stevens with Dr. Davis regarding plaintiff's injury and return to work warrant the striking of Dr. Davis' deposition testimony from the record. Salaam v. N.C. Dept. of Transportation, 122 N.C. App. 83,468 S.E.2d 536, disc. review improvidently allowed, 345 N.C. 494,450 S.E.2d 51 (1997).
2. On December 11, 2002, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the result of his December 11, 2002 injury by accident, plaintiff sustained injuries to his left knee, including a partial tear to his ACL, degenerative changes, and damage to his patella. Id.
3. Because the work to which plaintiff was assigned during the period of December 18, 2001 through January 4, 2002 was make-work that was not readily available in the competitive job market, it did not constitute suitable employment and was not truly indicative of any wage earning capacity. See, Peoples v. Cone Mills Corp., 316 N.C. 426, 437,342 S.E.2d 798, 805 (1986).
4. Based upon the credible evidence of record, defendant failed to prove that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v.Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). Accordingly, plaintiff's termination did not constitute a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32; Seagraves v.Austin Co. of Greensboro, supra.
5. Should the parties determine that plaintiff's weekly earnings during the period of December 11, 2001 to December 31, 2001 were less than his pre-injury average weekly wage, plaintiff would be entitled to be paid by defendant temporary partially disability compensation at the appropriate rate. N.C. Gen. Stat. § 97-30. The parties did not submit any evidence of his earnings during this period and should supplement the record with this information.
6. As the result of his December 11, 2001 injury by accident, plaintiff is entitled to be paid by defendant temporary partial disability at the rate of two-thirds the difference between his average weekly wage at the time of his injury of $540.68, and his average weekly wage during the periods of January 1, 2002 through January 4, 2002 and from January 8, 2002 through December 31, 2002 of $364.94, which calculates to be $117.22 per week ($540.68 — $364.94 = $175.74 x .667 = $117.22.). N.C. Gen. Stat. § 97-30. Over this fifty-two (52) week period, the total amount of compensation to which plaintiff is entitled is $6,095.44.
7. As the result of his December 11, 2001 injury by accident, plaintiff is entitled to be paid by defendant temporary partial disability at the rate of two-thirds the difference between his average weekly wage at the time of his injury of $540.68, and his average weekly wage during the period of January 1, 2003 through February 18, 2003 of $535.71, which calculates to be $3.31 per week ($540.68 — $535.71 = $4.97 x .667 = $3.31.). N.C. Gen. Stat. § 97-30. For this seven week period, the total amount of compensation to which plaintiff is entitled is $23.17.
8. As the result of his December 11, 2001 injury by accident, plaintiff is entitled to be paid by defendant total disability compensation at the rate of $360.47 per week for 3/7ths of a week for January 5, 2002 through January 7, 2002, and for the period of February 19, 2003 through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
9. As the result of his December 11, 2001 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, including but not limited to possible further surgery to his left knee. N.C. Gen. Stat. §§ 97-25; 97-25.1. Under the circumstances of this case, the services of plaintiff's wife in transporting plaintiff to and from his medical appointments during the period of December 13, 2001 to February 20, 2002 were reasonable and necessary and plaintiff is entitled to be reimbursed by defendant for mileage requests.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay to plaintiff temporary partial disability at the appropriate rate for the period of December 11, 2001 through December 31, 2001 once the parties agree on the amount of wages plaintiff earned during this period.
2. Defendant shall pay to plaintiff temporary partial disability at the rate of $117.22 per week from January 8, 2002 through December 31, 2002. Over this fifty-two (52) week period, the total amount of compensation to which plaintiff is entitled is $6,095.44. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below.
3. Defendant shall pay to plaintiff temporary partial disability at the rate of $3.31 per week during the period of January 1, 2003 through February 18, 2003. For this seven week period, the total amount of compensation to which plaintiff is entitled is $23.17. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below.
4. Defendant shall pay to plaintiff total disability compensation at the rate of $360.47 per week for 3/7ths of a week for January 5, 2002 through January 7, 2002, and for the period of February 19, 2003 through the present and continuing until such time as he returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved below.
5. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his December 11, 2001 injury by accident, including but not limited to possible further surgery to his left knee and mileage reimbursement for the period of December 13, 2001 to February 20, 2002.
6. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
7. Defendant shall pay the costs.
This the 4th day of January 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mlb